IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 1:14-CR-203-ODE-AJB |
| CHENHSIN CHAN, a/k/a Paul Chan, | |

ORDER

This criminal case comes before the Court on United States Magistrate Judge Alan J. Baverman's Report and Recommendation ("R&R") [Doc. 48] and Defendant Chenhsin Chan, a/k/a Paul Chan's Objections thereto [Doc. 55]. For the following reasons, Chan's Objections [Doc. 55] are OVERRULED, and Judge Baverman's R&R [Doc. 48] is ADOPTED IN FULL.

I.  **Background**

A.  Procedural

On May 29, 2014, the Grand Jury returned an indictment charging Chen with 39 total counts, including mail fraud, introduction of adulterated food, knowing distribution of a listed chemical, and money laundering [Doc. 1]. On July 23, 2014, Chen filed a Motion to Suppress Evidence and Release Funds [Doc. 16]. Specifically, he sought to: (1) suppress statements made to law enforcement officials; (2) suppress evidence seized pursuant to two separate warrants; and (3) secure the return of property-- assets and automobiles--to pay his attorney's fees [Id.]. The Government responded in opposition to the motion [Doc. 25], and Chen replied [Doc. 26]. On May 14, 2015, Judge Baverman held an evidentiary hearing on the motion with respect to the request to

suppress statements, after which he directed the parties to brief the matter [Docs. 33, 34].

After the post-hearing briefing, on November 17, 2015, Judge Baverman issued the R&R currently before the Court [Doc. 48]. Judge Baverman recommends denying Chen's motion [see id.]. Chen filed his timely Objections on December 1, 2015 [Doc. 55].

B.   Factual

On August 27, 2012, United States Magistrate Judge Ramon E. Reyes of the Eastern District of New York issued a search warrant authorizing a search of Chen's parent's home, located at 141-33 254th Street, Rosedale, New York 11422, out of which Chen operated his business ("Rosedale Warrant") [see Docs. 16-3, 16-4]. On August 29, 2012, Judge Reyes signed a warrant authorizing a search of a silver Mercedes Benz CLK 430, New York License Plate Number CTL 3566 ("Mercedes Warrant") [Doc. 16-7].

Both warrants described the property to be seized in attachments entitled "Attachment B" [Docs. 16-4 at 2; 16-7 at 2]. Both attachments described the property as follows, in relevant part:

> 1. All records[] relating to violations of the following statutes:
>
> (a) Possession and/or distribution of listed chemicals namely ephedrine and pseudoephedrine, in violation of Title 21, United States Code, Section 841(f)(1);
>
> (b) Distribution in interstate commerce, including New York, Georgia and elsewhere, of misbranded and/or adulterated foods and/or drugs containing listed chemicals, including but not limited to purported dietary supplements labeled to contain ephedrine alkaloids and products containing Active Pharmaceutical Ingredients (APIs), in violation of Title 21, United States Code, Section 331(a);

(c) Use of the mail and wires to perpetrate a scheme to obtain money under false or fraudulent pretenses, in violation of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud).

(d) Fraudulently or knowingly sending from the United States purported dietary supplements contrary to law of the United States, in violation of Title 18, United States Code, Section 554;

2. All records involving The Wholesale Source, LLC and/or VeryLean Products, LLC since January 1, 2008, including:

(a) Any and all misbranded and/or adulterated foods and/or drugs.

(b) Labels, labeling, as well as advertisements, pertaining to misbranded and/or adulterated foods and/or drugs, including magazines, videotapes, handouts, inserts, flyers, and other promotional material.

(c) Paraphernalia for packaging, weighing, or distributing misbranded and/or adulterated foods and/or drugs.

(d) U.S. currency, financial instruments, and other items of value and/or proceeds of manufacture, distribution, and/or possession of misbranded and/or adulterated foods and/or drugs.

[Docs. 16-4 at 4-5, 16-6 at 6-7 (footnote omitted)].

Special Agent Brian C. Kriplean with the United States Food and Drug Administration ("FDA") Office of Criminal Investigations supplied an affidavit in support of the application for the Rosedale Warrant [Doc. 16-2]. Agent Kriplean's affidavit states that the warrant application "seeks permission to search for records that might be found on the [Rosedale] PREMISES, in whatever form they are found" [Id. ¶ 31]. The Mercedes Warrant was supported by an affidavit from FDA Special Agent Jacque Maravic [Doc. 16-6]. Both warrants were executed on August 29, 2012 [Doc. 16-5 at 2; 16-8 at 2]. During the search of the Rosedale home, officers seized dozens of boxes containing boxes,

packets, and bottles of capsules, in addition to seizing records, documents, and electronic storage devices [see id. at 2-16]. The description of all of the capsules seized takes up the better part of 14 typed pages [see Doc. 16-5]. According to Defendant, Agent Kriplean stated he was taking everything regardless of what the labels said [Doc. 26-1 ¶ 6]. When Defendant asked why Agent Kriplean was taking "ephedra free" pills, Agent Kriplean replied, "[H]ow do I know you didn't put something in there[?]" [Id.].

In conjunction with the Rosedale search, law enforcement monitored Chan driving in the Mercedes, and followed him to a self-storage business [Doc. 16-6 at 3]. While Chan was inside the business, officers observed items through the windows of the Mercedes, including a large blue container drum, a gray backpack, a blue hard case, and a black duffel bag [Id. at 4-5]. Agent Maravic's affidavit specifically requested a warrant to search the Mercedes for the blue container drum capable of holding chemicals. During the subsequent search of the Mercedes, in addition to seizing the drum, officers seized electronics, records, CDs, a "capsulating" machine, and a box of coins, bottles, and a number of unknown powders [Doc. 16-8 at 2].

II. **Discussion**

   A. **Legal Standard**

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which the parties object. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). For a party's objections to warrant de novo

review, the party "must clearly advise the district court and pinpoint the specific findings that the party disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.).

B.  Analysis

In his motion to suppress, Defendant Chan argued in relevant part that the Government executed the warrants far beyond their scope [Doc. 16]. In particular, he claimed that while the warrants authorized seizure of records, the Government seized his business's entire stock and inventory--such as drugs related to sexual performance and menopause, and those labeled "ephedra free"--as well as food and drugs from the Mercedes [Id. at 5-6; Doc. 26 at 5]. To the extent that paragraph 2(a) of both warrants' attachments is ambiguous, Chan argues that the ambiguity should be construed against the Government [Doc. 26]. Additionally, Chen argues that the items could not have been seized under the "plain view" doctrine because they were not contraband [Doc. 16 at 6]. Judge Baverman concluded that under a commonsense reading of the warrant, misbranded and/or adulterated foods and drugs were in fact "records" of Chan's suspected violations [Doc. 48 at 33-34]. Accordingly, he recommends denying that portion of Chan's motion to suppress. In his objections, Chan contends that the warrants were clearly limited in scope to records, and the Government's seizure of the business's inventory --including items that were neither records nor contraband--was not authorized [Doc. 55 at 3].

5

The Fourth Amendment requires that search warrants "particularly describe the place to be searched and the items or persons to be seized" and "[o]nly items described in the search warrant may be seized." United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990). The particularity requirement prevents "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). Items which are seized but are not particularly described in the warrant are to be excluded from evidence. United States v. Hendrixon, 234 F.3d 494, 497 (11th Cir. 2000). This requirement does not necessitate technical perfection; instead, it is applied with "a practical margin of flexibility." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982). "The seizure of items not covered by a warrant does not automatically invalidate an otherwise valid search." United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991). "[A]bsent a 'flagrant disregard' of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized." Wuagneux, 683 F.2d at 1354. The crucial inquiry is always "whether the search and seizures were reasonable under all the circumstances." Id. at 1352. Relevant considerations include the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought. See Schandl, 947 F.2d at 465.

First, to the extent that Defendant argues that the searches executed upon the Rosedale residence and the Mercedes were in "flagrant disregard" of the respective warrants to necessitate suppression of all evidence seized--including that which properly

6

fell within the scope of the warrant, his argument fails, because the seizures made pursuant to both warrants were reasonable under the circumstances.

The warrant specified that agents were to search for records relating to the crimes with which Chan was charged--possession or distribution of ephedrine, distribution of misbranded and/or adulterated foods or drugs containing ephedrine and active pharmaceutical ingredients, mail and wire fraud, and fraudulently sending purported dietary supplements from the United States. They also authorized a search for records involving "any and all misbranded and/or adulterated foods and/or drugs." Thus, the warrants expressly included misbranded and/or adulterated foods and/or drugs within the parameters of the search, even though they confusingly listed such items as "records" involving Defendant's company.

Although the wording of the warrants is awkward, the Court does not agree that it is ambiguous. Given the crimes with which Defendant is charged, and the warrants' express inclusion of "misbranded and/or adulterated foods and/or drugs" in the items to be seized, the executing officer's seizure of Defendant's inventory from the Rosedale home did not "exceed[] any reasonable interpretation of the warrant's provisions." Wuagneux, 683 F.2d at 1354. Furthermore, with respect to the Mercedes search, Officer Maravic's affidavit clearly identifies items of interest that would not typically be described as "records," such as the backpack and container drum. Accordingly, the seizure of those items under the circumstances was even more reasonable. Thus, the officers did not exhibit "flagrant disregard" for either warrant,

7

and Defendant has not identified grounds that justify total suppression of the fruits of either search.

Second, insofar as Defendant requests suppression of the specific items that were outside of the scopes of the respective warrants, his claim also fails. As previously stated, the searches were reasonable under the circumstances. Additionally, as agents in this case searched through a variety of materials for evidence related to the crimes with which Chan is charged, "[i]t was inevitable that some irrelevant materials would be seized." See Schandl, 947 F.2d at 465 (finding massive search of documents for evidence of tax evasion was reasonable even though agents seized documents outside the scope of the warrants because crimes were generally only detected through careful analysis and synthesis of a large number of documents). Indeed, as Chan was charged with crimes related to adulterated and misbranded food and/or drugs, the products in Chen's inventory were relevant based on both their labeling and their contents. Whether inventory products were misbranded would not be immediately apparent to searching officers without further analysis. Agent Kriplean's statement to Chan during the Rosedale search--"[H]ow do I know you didn't put something in there[?]"--further underscores this point [see Doc. 26-1 ¶ 6]. "[A] search may be as extensive as reasonably required to locate the items described in the warrant." Wuagneux, 683 F.2d at 1352. Accordingly, the seizure of products labeled as ephedrine-free did not exceed the scope of the warrant.

### III. Conclusion

Upon de novo review of the portions of Judge Baverman's R&R to which Chan objects, Chan's Objections [Doc. 55] are OVERRULED.

After reviewing the remainder of the R&R to which no objection has been raised, the Court finds no clear error. Accordingly, Judge Baverman's R&R [Doc. 48] is ADOPTED IN FULL as the opinion of this Court.

SO ORDERED this 12 day of February, 2016.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE